UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEVIN BEAUREGARD, <br><br>    Plaintiff, <br><br>vs. <br><br>CHRISTOPHER BREAUX; KAYLA ENGLISH; TIMOTHY KENNEDY; ROLAND KINDELL; ARTHUR LAWSON; and JOHN DOE OFFICERS OF THE GRETNA POLICE DEPARTMENT, <br><br>    Defendants. | NO. 2:21-cv-00868 <br><br>**COMPLAINT** <br><br>JURY TRIAL REQUESTED |

Plaintiff Kevin Beauregard, by and through his undersigned counsel, complains that Defendants—Christopher Breaux, Kayla English, Timothy Kennedy, Roland Kindell, and John Doe Officers of the Gretna Police Department (collectively, "Officer Defendants"), individually and in their official capacities as police officers of the City of Gretna, and Arthur Lawson ("Lawson")—violated his constitutional rights and the laws of the State of Louisiana. He shows the Court as follows:

## NATURE OF THE ACTION

*Mr. Beauregard Endured an Atrocious Beating on May 5, 2020*

1. This case involves the unnecessary and brutal beating of Mr. Beauregard by officers of the Gretna Police Department ("GPD") on May 5, 2020. Mr. Beauregard, a 32-year-old Black man, was punched, kicked, and strangled by Officer Defendants while restrained by handcuffs—in other words, when he posed no threat. As a result of the incident, Mr. Beauregard suffered numerous injuries, including those to his neck and back. Officer Defendants acted under the color of law in violation of Mr. Beauregard's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution, and in violation of Mr. Beauregard's civil rights under 42 U.S.C. § 1983, for which Mr. Beauregard now seeks damages and attorneys' fees.

2. While in GPD custody, Mr. Beauregard was handcuffed to a holding cell bench by

his left hand, as his right arm was in a soft cast. He was sitting on the bench, upright and with his back to the wall. Officer Defendants began taunting Mr. Beauregard as he sat in this position, accusing him of being a drug dealer and displaying to him allegedly seized drug evidence. Frustrated by the taunts, Mr. Beauregard drove his leg backwards and kicked the holding cell wall underneath the bench and behind him.

3. Even though Mr. Beauregard was still restrained and handcuffed to the bench, posing no risk of harm to any GPD staff, a GPD officer charged at Mr. Beauregard and swung at him with a closed fist. Mr. Beauregard turned his head to avoid the initial blow from the officer, but the officer then body slammed the seated Mr. Beauregard and pushed the right side of his face into the cell wall.

4. Another GPD officer uncuffed Mr. Beauregard and threw him to the holding cell floor, at which point several officers rushed into the room, such that a total of six or seven GPD officers all began to simultaneously beat Mr. Beauregard with closed fists, elbows, and knees. Multiple officers held down Mr. Beauregard by his legs, as one officer strangled him; another repeatedly kicked him in the ribs; and still another twisted the arm in a cast, all while shoving a knee into Mr. Beauregard's left side.

5. Mr. Beauregard endured the brutal beating for approximately ten to fifteen minutes.

6. With his left arm handcuffed to a bench and another in a cast, Mr. Beauregard at no point posed a risk of harm to any person—officer or otherwise. This was especially so when Mr. Beauregard was pinned to the ground by several officers at one time, helpless and unable to defend himself or avoid the blows.

7. Due to the ongoing and pervasive anxiety and emotional distress that Mr. Beauregard has suffered in the wake of this beating, Mr. Beauregard lost his job and now lives in his car.

***The Senseless Violence Mr. Beauregard Endured Is Not Atypical***

8. Mr. Beauregard is one of numerous individuals who allege they have endured senseless violence at the hands of GPD,[1] a department with a disturbing history of discrimination and violence against Black people.[2]

9. Moreover, this most recent beating is not Mr. Beauregard's first negative encounter with police. Indeed, his youth involves a history of similarly unprovoked negative encounters. Those multiple instances of police harassment and assault underly his outrage with the circumstances at issue here. They have also bred such distrust in law enforcement that he feels obligated to vindicate his civil rights for the most recent horror he endured as a Black man in America.

---

[1] *See, e.g.*, *Durant v. Brooks*, 826 F. App'x 331 (5th Cir. 2020) (alleging that GPD officers kicked and punched man who was handcuffed in back of police vehicle); *Manis v. Zemlik*, 11-799 (La. App. 5 Cir. 5/8/12), 96 So. 3d 509, *writ denied sub nom. Manis ex rel. Plaisance v. Zemlik*, 2012-1283 (La. 10/8/12), 98 So. 3d 852 (suit arising from GPD officer shooting and killing suspect who was restrained in back seat of police car); *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020) (alleging that GPD officers unnecessarily tased and beat a mentally ill man, resulting in his death); *Bailey v. Normand*, No. CIV.A. 12-2795, 2014 WL 5113348 (E.D. La. Oct. 10, 2014), *aff'd sub nom. Bailey v. Lawson*, 614 F. App'x 752 (5th Cir. 2015) (alleging that GPD officers brutally assaulted a woman during execution of a search warrant); *Morris v. Mekdessie*, No. CV 14-1741, 2016 WL 740340 (E.D. La. Feb. 25, 2016), *aff'd*, 768 F. App'x 299 (5th Cir. 2019) (alleging that GPD officer tased and beat man restrained during traffic stop); *Francois v. Blandford*, No. CIV.A. 10-1330, 2011 WL 666873 (E.D. La. Jan. 24, 2011), *report and recommendation adopted*, No. CIV.A. 10-1330, 2011 WL 666869 (E.D. La. Feb. 11, 2011) (alleging that GPD officer choked man to point of unconsciousness, then inserted his finger into plaintiff's rectum).

[2] *See, e.g.*, Southern Poverty Law Center, *Racial Profiling in Louisiana: Unconstitutional and Counterproductive*, 5 (2018), https://www.splcenter.org/sites/default/files/leg_special_report_racial_final.pdf ("In 2016, black people comprised two-thirds of people arrested in Gretna but only one-third of the city's population."); Brittany Burk, *Royal Cyril Brooks: One Victim of a Corrupt Police Department* (2016), https://repository.library.northeastern.edu/downloads/neu:m042z1655?datastream_id=content; Andrea J. Ritchie & Joey L. Mogul, *In the Shadows of the War on Terror: Persistent Police Brutality and Abuse of People of Color in the United States,* 1 DePaul J. for Soc. Just. 175, 229 (2008).

10. Prior to the events for which he now sues, Mr. Beauregard experienced the following encounters with police:

- In or around 2003, when Mr. Beauregard was 14 years old, he was attacked by a police officer while waiting outside of a Circle K in Kenner, Louisiana. The officer claimed that Mr. Beauregard was out past curfew and started hitting him. The officer never asked for Mr. Beauregard's name or any other information. While Mr. Beauregard was not seriously physically injured, he was traumatized and disturbed by this unprovoked attack.

- In or around 2005, when Mr. Beauregard was 16 years old, he and a friend were walking back from a store in New Orleans East when an officer pulled his police cruiser over next to them and asked for their names. Mr. Beauregard, who was apprehensive of the officer following the attack he suffered two years prior, considered limited interaction safer than a more prolonged conversation and provided his identification. The officer subsequently put Mr. Beauregard and his friend in the back of his car and charged them with trespassing.

- In or around 2006, when he was 17 years old, Mr. Beauregard was physically attacked by a police officer—for the second time in his youth—while attempting to register for school in Houston, Texas. Mr. Beauregard had stepped out of the school office to take a phone call and heard a police officer laughing with a few teenage girls. The officer had said something about Mr. Beauregard, and Mr. Beauregard asked the officer why he was laughing. The officer then hit Mr. Beauregard and tackled him to the ground.

11. Mr. Beauregard's experience is unfortunately not unique among Black youth:

> Black youth are systematically profiled and targeted by police, and make up 35% of arrests of people under 18; twice as likely to be arrested as white youth; disproportionately tried as adults; twice as likely to be sentenced to life without parole; five times as likely to be incarcerated or committed; and more likely to be sent to adult facilities, and to be held in solitary confinement. . . . Black students are twice as likely to be arrested or referred to law enforcement while at school.[3]

---

[3] The Movement for Black Lives, *End the War on Black Youth,* https://m4bl.org/policy-platforms/end-the-war-on-black-youth/. *See also* Carrie Spector, *Schools need to acknowledge their part in the criminalization of Black youth, Stanford scholar says,* Stanford News, June 18, 2020, https://news.stanford.edu/2020/06/18/school-systems-make-criminals-black-youth/; *Criminalization of Minority Youth: Youth Criminally Tried and Incarcerated as Adults,* Shadow Report to the U.N. Committee on the Elimination of All Forms of Racial Discrimination, June 30, 2014, https://media.law.miami.edu/clinics/pdf/2014/CERD-Criminalization%20of%20Youth.pdf; Victor M. Rios, *The Hyper-Criminalization of Black and Latino Male Youth in the Era of Mass Incarceration*, 8 Souls 40 (2006).

12. The targeting of minority Black youth by police perpetuates cycles of criminalization and poverty in Black communities. Young Black people who have negative interactions with law enforcement have lower educational achievement and a higher likelihood of being incarcerated in the future.[4]

13. The abuse that Mr. Beauregard endured at the hands of GPD was a continuation of this pattern of discriminatory treatment that he and many people of color are forced to confront from a young age.

14. Mr. Beauregard seeks to hold Lawson and Officer Defendants accountable for violating his constitutional and statutory rights on May 5, 2020. It is evident that, unless and until Defendants are held accountable for their racially motivated misconduct and violence, they will continue to violate the rights of Black people—regardless of whether those individuals are cooperative, subdued, or otherwise pose no threat.

## JURISDICTION AND VENUE

15. This action seeks to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to Mr. Beauregard by the Constitution and laws of the United States. Mr. Beauregard brings this action pursuant to 42 U.S.C. §§ 1983 and 1988.

16. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3).

17. The Court has supplemental jurisdiction over all other claims asserted under the laws of the State of Louisiana, pursuant to 28 U.S.C. § 1367, because they arise out of the same

---

[4] *See, e.g.*, Anna Aizer & Joseph Doyle, *What is the Long-Term Impact of Incarcerating Juveniles?*, VOX EU, July 16, 2013, https://voxeu.org/article/what-long-term-impact-incarcerating-juveniles; Kim Eckart, *How a police contact by middle school leaders to different outcomes for Black, white youth,* University of Washington News, Dec. 3, 2020, https://www.washington.edu/news/2020/12/03/how-a-police-contact-by-middle-school-leads-to-different-outcomes-for-black-white-youth/.

operative facts and are so related to the federal claims that they are part of the same case or controversy.

18. Venue is proper in this District in accordance with 28 U.S.C. § 1391(b) because, on information and belief, the Officer Defendants reside in Jefferson Parish, Louisiana, which is located in this District, and a substantial part of the events giving rise to the claims herein occurred in Jefferson Parish, Louisiana, which is located in this District.

## PARTIES

19. Plaintiff Kevin Beauregard is a resident of Harvey, Louisiana.

*The Officer Defendants*

20. Defendant Christopher Breaux was, at all relevant times, an officer at GPD. On information and belief, Breaux resides in Jefferson Parish, Louisiana. Breaux is sued in his individual and official capacities.

21. Defendant Kayla English was, at all relevant times, an officer at GPD. On information and belief, English resides in Jefferson Parish, Louisiana. English is sued in her individual and official capacities.

22. Defendant Timothy Kennedy was, at all relevant times, an officer at GPD. On information and belief, Kennedy resides in Jefferson Parish, Louisiana. Kennedy is sued in his individual and official capacities.

23. Defendant Roland Kindell was, at all relevant times, a sergeant at GPD. On information and belief, Kindell resides in Jefferson Parish, Louisiana. Kindell is sued in his individual and official capacities.

24. Defendant John Doe Officers of GPD ("Does"), at all relevant times, were employed as officers by GPD. Mr. Beauregard is not aware of the true names and capacities of Does and therefore sues Does by such fictitious names. On information and belief, Does reside in

Jefferson Parish, Louisiana. Does are sued in their individual and official capacities. Mr. Beauregard will amend this complaint to state the true name and capacity of Does when such have been ascertained.

25. Defendants Breaux, English, Kennedy, Kindell, and Does (the "Officer Defendants") were, at all relevant times, employed as commissioned police officers by GPD, and were acting and/or neglected to act in the course and scope of their employment and under color of law.

26. The Officer Defendants are liable jointly, severally, and *in solido* for the intentional, excessive, and/or otherwise unconstitutional and tortious conduct set forth below.

***Defendant Lawson***

27. Defendant Arthur Lawson was, at all relevant times, the Chief of GPD. On information and belief, Lawson resides in Jefferson Parish, Louisiana. Upon information and belief, Lawson's responsibilities include but are not limited to the hiring, training, supervision, discipline, administration, policies, customs, practices, operations, management, and control of GPD and its officers, including the Officer Defendants. As such, Lawson was the final policy maker for GPD in the areas of law enforcement and the employment, training, and supervision of police officers. As a matter of federal law, Lawson is liable for his own actions as final policy maker. As a matter of Louisiana state law, Lawson is liable for his own actions and is vicariously liable for the actions of the Officer Defendants. Lawson is sued in his official capacity.

## FACTS

### *The Traffic Stop and Search of Mr. Beauregard's Car*

28. On May 5, 2020, at around 11:20 P.M., Mr. Beauregard was pulling out of the Sentry Inn, a motel located at 50 Westbank Expressway, in his grey 2012 Chevy Malibu. He had purchased the car three days prior, so it still bore the dealer's tags and was in normal operating condition.

29. At approximately 11:25 P.M., Defendant English pulled Mr. Beauregard over at or near the intersection of Vespasian Blvd. & L B Landry Ave.

30. Upon information and belief, Defendant English had followed Mr. Beauregard from the motel parking lot.

31. Defendant English approached Mr. Beauregard's vehicle and asked him where he was going and if he had a license, registration for the car, and proof of insurance.

32. Before Mr. Beauregard could provide this information, Defendant English stated that she smelled marijuana and asked if Mr. Beauregard had any weapons or narcotics in the car. Mr. Beauregard did not answer her question and stated that he did not give his consent for Defendant English to search his car.

33. Defendant English asked Mr. Beauregard to step out of the car. Mr. Beauregard asked why she wanted him to step out of the car and asked if he was being arrested.

34. Defendant English told Mr. Beauregard that he was being detained, removed him from the car, and handcuffed him.

35. Mr. Beauregard did not receive any *Miranda* warnings and was not otherwise informed of his rights upon arrest.

36. Mr. Beauregard had a soft cast on his right hand, so Defendant English handcuffed his left hand to his right leg and made him sit on the sidewalk.

37. Two more squad cars then arrived on the scene.

38. Mr. Beauregard heard an unknown male officer say, "We followed you from the hotel." Defendant English responded by hushing the officer. Mr. Beauregard asked the officer to repeat himself, but the officer did not oblige.

39. Defendant English searched Mr. Beauregard's car, after which a second officer also searched the car.

40. During the search, the officers found a firearm and marijuana.

41. Mr. Beauregard sat handcuffed on the side of the road for approximately an hour and a half.

42. After the search, Defendant English and Defendant Doe picked up a still handcuffed Mr. Beauregard from the side of the road, one on each side, each carrying an arm and a leg, and carried him into the squad car.

43. The officers then brought Mr. Beauregard to GPD.

**The Search of Mr. Beauregard's Motel Room**

44. When he arrived at GPD, Defendant English and Defendant Doe uncuffed Mr. Beauregard and walked him into the station.

45. Once they were inside the station, Defendant English and Defendant Doe handcuffed Mr. Beauregard's left arm to a chair.

46. Mr. Beauregard did not receive *Miranda* warnings and was not otherwise informed of his rights.

47. Regardless, Defendant English questioned Mr. Beauregard for at least fifteen to twenty minutes, asking to where Mr. Beauregard had been driving and threatening to tow his car.

48.     Officer Defendants informed Mr. Beauregard that they found a motel room key during their search of his car. They asked Mr. Beauregard for permission to go into the motel room, which he refused to provide.

49.     Defendant English again threatened to tow Mr. Beauregard's car, telling him it would not be towed if he let the police search the motel room. Mr. Beauregard again refused to permit the search.

50.     Defendant English also asked Mr. Beauregard if she could look through his phone. He declined.

51.     On information and belief, Officer Defendants procured a search warrant for Mr. Beauregard's motel room.

52.     Mr. Beauregard was next taken by Defendant Doe to a holding cell, where he sat alone with his right arm in a cast and his left arm handcuffed to a metal bench connected to the wall.

53.     About fifteen minutes later, Officer Defendants returned to the police station and showed Mr. Beauregard money and an ounce of marijuana.

**The Attack on Mr. Beauregard**

54.     A group of about four Officer Defendants then began to taunt Mr. Beauregard, accusing him of being a drug dealer and displaying evidence of said drugs recently brought to the station.

55.     Mr. Beauregard asked Defendant Kindell about his *Miranda* rights. Defendant Kindell responded by pointing to the wall, where a sign was hanging that listed *Miranda* rights.

56.     Mr. Beauregard, still handcuffed to the bench, moved his foot backward in a burst of exasperation, kicking the wall behind him and underneath the bench—in the direction opposite from where Officer Defendants stood.

57. Defendant Kindell told Mr. Beauregard to "kick the wall again." Mr. Beauregard did so.

58. Defendant Kindell then charged at Mr. Beauregard and swung at him with a closed fist. Mr. Beauregard, sitting upright on the bench to which he was handcuffed, turned his head to avoid Defendant Kindell's blow.

59. Defendant Kindell then threw his own body against the seated Mr. Beauregard, pushing the right side of his face and as much of his body as possible into the wall.

60. Another Officer Defendant uncuffed Mr. Beauregard from the bench and threw him to the ground. The Officer Defendants, around six or seven in total, then all began attacking Mr. Beauregard. Upon information and belief, these were the same officers who had searched Mr. Beauregard's motel room.

61. Mr. Beauregard was face down with his nose pressed into the ground, while two to four Officer Defendants were on top of Mr. Beauregard's legs, restraining him.

62. While Mr. Beauregard was subdued by Officer Defendants on the floor, Defendant Kindell grabbed Mr. Beauregard's head, encircling Mr. Beauregard's neck with his hands. He then dug all ten fingers into Mr. Beauregard's neck, strangling him.

63. Mr. Beauregard felt like he was choking.

64. Defendant Kindell was kneeling on the ground with Mr. Beauregard's head in between his legs. In this position, Mr. Beauregard was unable to move his head to the left or right, or otherwise obtain relief from Defendant Kindell's strangling.

65. Mr. Beauregard was still face down and pinned to the ground when another Officer Defendant attacked. This Officer Defendant repeatedly kicked Mr. Beauregard in the ribs, all while he was still being strangled.

66. As Mr. Beauregard alternated between using his free arm to try to remove Defendant Kindell's fingers from his neck and to protect his ribs from the repeated kicking, Defendant English twisted Mr. Beauregard's casted right arm upward and behind him. As this was occurring, a third Officer Defendant repeatedly jabbed their knee into Mr. Beauregard's left side.

67. Mr. Beauregard was in a severe amount of pain throughout the beating and, because he was restrained by multiple Officer Defendants, he was unable to avoid the onslaught of blows.

68. Mr. Beauregard—who had done nothing more than kick a wall behind him twice—lay face down and helpless on the floor, unable to resist the beating because of the pain and anguish he suffered throughout its occurrence.

69. Mr. Beauregard endured the beating for at least ten to fifteen minutes, during which time he felt terrified, defenseless, violated, and traumatized.

70. At no point did Mr. Beauregard pose a threat to any of the officers. Not only was he restrained by handcuffs to a solid bench, he was alone in a holding room and had no access to any weapon or anything that could be used as a weapon.

71. After the beating, Mr. Beauregard was taken to central lockup at Jefferson Parish Correctional Center, where he requested medical attention. He received only ibuprofen.

72. Mr. Beauregard was never seen by an EMT or another medical professional during the five days he spent at Jefferson Parish Correctional Center.

73. As a result of the attack, Mr. Beauregard sustained multiple injuries to his head, neck, and torso, and continues to suffer from ongoing neck and back problems caused by the attack.

74. Mr. Beauregard was forced to delay surgery on his right hand, which was in a soft cast at the time.

75. Mr. Beauregard has continued to endure significant mental and emotional stress and anxiety, which has made it challenging for him to live his day-to-day life.

76. Before his incident, Mr. Beauregard was a lead technician for a commercial cleaner, where he repaired and cleaned fans and other appliances.

77. After the beating, Mr. Beauregard had significant difficulties focusing at work. Because of the pervasive stress and anxiety, he had multiple emotional breakdowns while on the job.

78. As a result of his emotional distress, Mr. Beauregard lost his job.

79. Mr. Beauregard now lives in his car.

80. The stress and anxiety have continued to dominate Mr. Beauregard's life, and are exacerbated by the fact that Mr. Beauregard must now also worry about being able to raise and provide for his five-year-old son.

### FIRST CAUSE OF ACTION
**42 U.S.C. § 1983 – Excessive Force**
(As to the Officer Defendants)

81. Mr. Beauregard hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

82. 42 U.S.C. § 1983 provides:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress. . . .

83. The Officer Defendants deprived Mr. Beauregard of clearly established rights secured to him under the United States Constitution, particularly the Fourth Amendment rights to be free from unreasonable seizures and the use of excessive force against one's person.

84. The Officer Defendants' use of excessive force against Mr. Beauregard was the proximate and direct cause of Mr. Beauregard's injuries. This use of force was not reasonable,

proportional, or appropriate, given that Mr. Beauregard was not resisting arrest, had never made any threatening gestures toward the Officer Defendants, and did not pose any threat to the safety of the Officer Defendants or any other person. Any reasonable police officer in these circumstances would have recognized that the excessive and violent force applied to Mr. Beauregard while he was restrained or otherwise subdued was utterly unjustified, unnecessary, and unreasonable.

85. In depriving Mr. Beauregard of his rights under the United States Constitution, the Officer Defendants acted under color of law in their respective capacities as Gretna police officers, and their joint and several actions and omissions were conducted within the scope of their respective official duties or employment. This deprivation under color of law is actionable under and may be redressed by 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION
**Battery**
(As to the Officer Defendants)

86. Mr. Beauregard hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

87. The Officer Defendants physically attacked Mr. Beauregard without his consent and without legal justification.

88. The Officer Defendants intended to cause the harmful and offensive contact.

89. Mr. Beauregard was harmed as a result of the contact.

## THIRD CAUSE OF ACTION
**Negligence**
(As to the Officer Defendants)

90. Mr. Beauregard hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

91. The Officer Defendants owed a heightened duty to Mr. Beauregard to protect him from undue harm while he was in their custody.

92. The Officer Defendants breached this duty when they brutally attacked Mr. Beauregard.

93. As a direct and proximate result of the acts of the Officer Defendants described herein, Mr. Beauregard suffered physical injury, psychiatric distress, and continues to suffer from severe shock, distress, anguish, sorrow, and loss of enjoyment of life.

### FOURTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**
(As to the Officer Defendants)

94. Mr. Beauregard hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

95. Mr. Beauregard asserts violations of Louisiana law relative to intentional torts by the Officer Defendants, all of whom were acting within the course and scope of their employment with GPD.

96. At all relevant times, the Officer Defendants were acting under the color of state law.

97. The acts or omissions of the Officer Defendants, as described herein, deprived Mr. Beauregard of his constitutional rights and caused him other damages.

98. As a direct and proximate result of the intentional acts of the Officer Defendants described herein, carried out in reckless disregard, falsity, and/or without sufficient factual information, Mr. Beauregard suffered physical injury and psychiatric distress, and continues to suffer from severe shock, distress, anguish, sorrow, and loss of enjoyment of life.

99. The aforesaid physical and psychological injuries sustained by Mr. Beauregard were caused wholly by reason of the intentional, reckless, and/or negligent acts of the Officer Defendants as described herein.

100. The Officer Defendants engaged in extreme and outrageous conduct, and acted maliciously and with specific intent to oppress and harm Mr. Beauregard and/or with reckless disregard for the consequences of their actions and omissions.

**FIFTH CAUSE OF ACTION**
**Vicarious Liability**
(As to Defendant Lawson)

101. Mr. Beauregard hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

102. At all relevant times, the Officer Defendants were acting under color of law and in the course and scope of their employment with GPD.

103. Accordingly, as a matter of Louisiana law, Defendant Lawson, in his Official Capacity as Chief of GPD, is vicariously liable for all conduct of, or attributable to, the Officer Defendants.

**SIXTH CAUSE OF ACTION**
**Conspiracy**
(As to the Officer Defendants)

104. Mr. Beauregard hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

105. The Officer Defendants planned and accomplished an unlawful purpose by violating Mr. Beauregard's constitutional rights under the Fourth and Fourteenth Amendments and his civil rights under 42 U.S.C. § 1983, namely, the use of excessive force on, battery of, and intentional infliction of emotional distress upon Mr. Beauregard.

106. The Officer Defendants, by committing overt, hostile acts during the attack on Mr. Beauregard that lasted more than ten minutes—including that some Officer Defendants pinned Mr. Beauregard to the ground so that the remaining Officer Defendants could strangle, kick, knee, and otherwise make intentional physical contact with Mr. Beauregard—acted in concert and

assisted one another to accomplish the unlawful purpose described above.

107. These discriminatory and violent actions against Mr. Beauregard by the Officer Defendants were executed under the color of law with racial animus, resulting in Mr. Beauregard's physical and mental trauma.

108. The Officer Defendants' actions are consistent with previous discrimination and racial violence against Black people by the GPD.

109. The Officer Defendants are therefore conspiratorially liable for all torts and misconduct as set forth in this complaint, pursuant to Louisiana Civil Code § 2324 and 42 U.S.C. § 1983.

## **PRAYER FOR RELIEF**

Mr. Beauregard respectfully requests that this Court enter judgment for Mr. Beauregard and against each Defendant, jointly and severally, and award the following relief, in each case, in an amount to be determined at trial for violations of Mr. Beauregard's constitutional rights:

   a. Compensatory damages;

   b. Declaratory damages;

   c. Punitive damages;

   d. Special damages;

   e. Reasonable attorneys' fees and costs;

   f. Prejudgment interest; and

   g. Such other relief as this Court may deem just and proper.

Dated: April 30, 2021                                Respectfully submitted,

                                                     */s/ Stephanie L. Willis*
                                                     Stephanie L. Willis
                                                     LA. Bar No. 31834

swillis@laaclu.org
ACLU FOUNDATION OF LOUISIANA
P.O. Box 56157
New Orleans, LA 70156
(t) 516.435.5570

Nora S. Ahmed*
nahmed@laaclu.org
P.O. Box 56157
New Orleans, LA 70156
New Orleans, LA 70112
(t) 917.842.3902

Nicholas S. Davis*
Nick.Davis@alston.com
ALSTON & BIRD LLP
3700 Hulen St., Ste. 150
Fort Worth, TX 76107
(t) 214.922.3400

Katherine W. Gamsey*
Katie.Gamsey@alston.com
Max E. Rubinson*
Max.Rubinson@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309
(t) 404.881.7000

Ashley De Vance*
Ashley.DeVance@alston.com
ALSTON & BIRD LLP
333 South Hope Street
16th Floor
Los Angeles, CA 90071
(t) 213.576.1000

*Pro Hac Vice Application Forthcoming

Counsel for Kevin Beauregard

- 19 -

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing in the Court's CM/ECF system which will automatically provide notice to all counsel of record, this 30 day of April, 2021.

                                                           */s/ Stephanie L. Willis*
                                                           Stephanie L. Willis